## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JENNY L. N.**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 3:20-cv-01148-GCS**[2] |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| **Defendant.** | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff filed for DIB in 2017, alleging a disability date beginning on March 17, 2017. (Tr. 13). However, Plaintiff's claim was unsuccessful, both initially and on reconsideration. *Id*. The Administrative Law Judge ("ALJ") held a hearing on February 20, 2020, at which Plaintiff was represented by council. *Id*. On March 11, 2020, the ALJ

---

[1]     In keeping with the court's usual practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]     This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 9).

denied Plaintiff's claim. *Id*. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

### ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue:

1.      Whether the ALJ erred by failing to account for Plaintiff's deficit in persistence in concentrating in the Residual Functional Capacity ("RFC") finding.

### APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his or her former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four.

Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. First, the ALJ noted that Plaintiff had not engaged in substantial gainful activity since her onset

date in 2017. (Tr. 13). The ALJ then found that Plaintiff had the following severe impairments: seizures/psychogenic non-epileptic seizures, asthma/Chronic Obstructive Pulmonary Disease ("COPD")/pulmonary emphysema, anxiety, mood disorder/ depression, and Post-Traumatic Stress Disorder ("PTSD"). (Tr. 16). These impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. The ALJ also found that Plaintiff carried less significant impairments of gallstone cholecystitis status-post cholecystectomy, acute cystitis, headaches/migraines, cervical dextroscoliosis osteoarthritis, "mild" osteoarthritis of the cervical spine, "mild" lumbar spondylosis, "mild" left thumb osteoarthritis and ulnar cyst, hyperlipidemia, "trivial" left shoulder osteoarthritis with scoliosis, pineal cyst, gastroesophageal reflux disease, and urge incontinence. *Id*. However, he also noted that these impairments did not more than minimally limit Plaintiff's ability to work. *Id*.

Although Plaintiff suffered from severe impairments, the ALJ determined that these impairments and the combination of impairments did not meet or medically equal the severity of those listed in 20 C.F.R. § 404. (Tr. 18). Of particular importance to this case, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria listed in 12.04. *Id*. The ALJ noted that Plaintiff must demonstrate at least one extreme or two marked limitations in a broad area of function, including: "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." *Id*. A claimant demonstrates a marked limitation when they are unable to function in an area

independently, appropriately, or effectively on a sustained basis. *Id*. An extreme limitation is the inability to function independently, appropriately, or effectively in the area. *Id*.

According to the ALJ, Plaintiff had a moderate limitation in understanding, remembering, or applying information. (Tr. 18). Plaintiff testified that she struggled to concentrate and required reminders to take her medication; however, she also stated that she could perform personal care tasks, including cooking simple meals and completing household chores. *Id*. She also cared for others in her household. *Id*. Similarly, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, and maintaining pace. (Tr. 19). Although Plaintiff testified that she has a hard time completing tasks, she also stated she could shop in stores several times per week, care for others, and do household chores. *Id*. Further, Plaintiff's mental status examinations did not support a greater limitation. *Id*.

The ALJ found only a mild limitation in Plaintiff's ability to adapt or manage herself. (Tr. 19). When Plaintiff had a seizure, she was no longer able to complete daily tasks without assistance. *Id*. However, she was also able to maintain her overall well-being and finances. *Id*. Further, the ALJ found that clinical findings from Plaintiff's medical records did not demonstrate a consistent difficulty adapting to clinical, group, or public settings. *Id*. Equally, the ALJ found a mild limitation in Plaintiff's ability to interact with others. *Id*. While Plaintiff testified as to indifference towards others, she also

stated she enjoyed spending time with others and often spent time with her boyfriend and friend. *Id.*

In addition to considering Plaintiff's testimony, the ALJ also closely scrutinized her medical records. Although Plaintiff visited Stephen G. Vincent, Ph.D. FICPP, in March 2018, she denied any formal psychological or psychiatric treatment. (Tr. 24). The ALJ also noted that Plaintiff began taking Effexor to treat her mood symptoms and started individual therapy in late 2018. *Id.* Plaintiff's therapist noted that she had depressed and anxious affect, but that she was within the normal limits of expected behavior. *Id.* These findings matched those of the doctors conducting her mental status examinations. *Id.* The ALJ found that these records did not support Plaintiff's claims of a debilitating limitation. *Id.*

The ALJ also evaluated the findings of State Agency Consultants ("SAC") Leslie Fyans, Ph.D., and Tyrone Hollerauer, Psy.D. (Tr. 26). Both SACs found that Plaintiff had mild limitations in all areas, except for a moderate limitation in CPP. *Id.* However, the SACs also noted that Plaintiff had the ability to do one and two-step unskilled tasks. *Id.* The ALJ found these evaluations partially persuasive, as Plaintiff's Effexor prescription indicated a moderate, rather than mild, limitation in understanding and adaptation. *Id.* The ALJ therefore "accommodated [Plaintiff's] moderate difficulties understanding, remembering, or applying information; maintaining concentration, persistence or pace; and adapting or managing herself into the RFC." (Tr. 25). The resulting RFC limited Plaintiff thusly as follows:

> [Plaintiff] is able to carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes.

(Tr. 20).

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. As Plaintiff raises issues related only to the ALJ's mental RFC findings, the Court will limit its discussion of the evidence to that pertinent to those findings.

### 1.    Evidentiary Hearing

During the hearing on Plaintiff's level of disability, Plaintiff explained that she had "a hard time functioning." (Tr. 49). Plaintiff particularly struggled with memory, and she stated that her seizures prevented her from working. *Id.* Although Plaintiff stated that she saw a psychiatrist and took medication, she also explained that she needed to be watched when she went to the store because she was otherwise unable to function. (Tr. 50). Plaintiff testified that she lived with her boyfriend and his mom, and she would assist with laundry and sweeping with help from her boyfriend's mom. (Tr. 55). She would also prepare simple meals, like making sandwiches or microwaving food. (Tr. 56). In her free time, she would play games or visit Facebook on her phone. *Id.*

Vocational Expert ("VE") Denise Waddell also provided testimony during the hearing. (Tr. 60). The ALJ posed two hypotheticals to Ms. Waddell. In the first, the ALJ asked whether work existed for a person who, among other physical limitations, was able to carry out "detailed, but uninvolved, instructions in a performance of simple, routine,

and repetitive tasks in a low stress work environment with no fast-paced production requirements, involving simple work-related decisions, and with only occasional judgment and workplace changes." (Tr. 62-63). Ms. Waddell found that such a person could perform unskilled work at a level two. (Tr. 63). The ALJ then asked whether work existed for a person who, in addition to the above limitations, was also absent from work for two days per month. *Id.* Ms. Waddell found that no work would exist for such a person. *Id.*

### 2.    Medical Records

On March 8, 2018, Plaintiff saw Dr. Vincent on referral from the adjudicator for the Department of Disability Determination Services for a mental status examination. (Tr. 1612). Although Plaintiff indicated that she had symptoms of depression secondary to her inability to function due to her seizures, she also informed Dr. Vincent that she did not have a history of psychological or psychiatric treatment at that time. (Tr. 1613). Plaintiff informed Dr. Vincent that she no longer took pleasure or satisfaction in previously joyful hobbies and that her energy level was low. *Id.* She presented as melancholy and with a lack of energy. *Id.*

During the examination, Dr. Vincent found that Plaintiff was not pre-occupied and that she was logical, coherent, and capable of good analytical thinking. (Tr. 1613). Plaintiff correctly identified large cities, the current president and past presidents, and famous celebrities. (Tr. 1613-1614). She also interpreted common proverbs correctly and identified similarities and differences between common categories of objects, including

trees and bushes. (Tr. 1614). Although Dr. Vincent found that Plaintiff reported symptoms of depression, he also found that she was cognitively intact. *Id*.

The first documentation of Plaintiff meeting with Mr. Homan for psychotherapy was on December 13, 2018; however, Mr. Homan's progress notes from that date also referred to Plaintiff's progress on goals and a continuation of a similar treatment plan, indicating that Plaintiff had seen Mr. Homan prior to this meeting. (Tr. 1983-1984). Mr. Homan noted that Plaintiff had anxiety, depression, mood swings, sexual difficulty and sleep disturbances. (Tr. 1984). He also found that at this time she had declined on her progress goals. *Id*. She had further declined in her treatment goals on January 16, 2019, though Mr. Homan also reported that Plaintiff's behavior was within normal limits. (Tr. 1985). Mr. Homan found the same decline in April and May of 2019. (Tr. 1988, 1990, 1991). On June 19, 2019, Mr. Homan noted that there was no change in Plaintiff's progress on her previously identified treatment goals. (Tr. 2000). This stayed consistent in July, October, and November 2019. (Tr. 2003, 2006, 2008).

During an October 14, 2019 visit to Dr. Roxanne Strohbeck for treatment of her physical symptoms, Plaintiff reported that she was struggling with memory problems and forgot things easily. (Tr. 1942). On November 19, 2019, Dr. Strohbeck noted that Plaintiff was a "poor historian due to memory issues." (Tr. 1876).

### 3.     The State Agency Consultant's Review

On March 19, 2018, SAC Fyans evaluated Plaintiff's medical records in order to arrive at a recommended RFC. (Tr. 79). In section one of the Mental Residual Functional

Capacity Assessment ("MRFC"), Dr. Fyans found that Plaintiff had sustained concentration and persistence limitations. (Tr. 78). Specifically, Plaintiff was moderately limited in her ability to carry out detailed instructions, as well as her ability to maintain attention and concentration for extended periods. *Id.* In the "Additional Explanation" section of the MRFC, Dr. Fyans explained that Plaintiff presents with major depression symptoms secondary to medical issues "which may inhibit carrying out detailed instructions and extended concentration . . . ." (Tr. 79). However, Dr. Fyans also explained that Plaintiff's "cognitive and attentional skills for simple one and two step tasks are intact." *Id.* Notably, Plaintiff "can sustain this across a workday and a work week." *Id.* Dr. Fyans also found that Plaintiff was able to carry out routine chores and tasks. *Id.*

Dr. Hollerauer evaluated Plaintiff's medical records on June 19, 2018. (Tr. 114). Like Dr. Fyans, Dr. Hollerauer found that Plaintiff had sustained concentration and persistence limitations, including moderate limitations in her ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods. (Tr. 113-114). However, in the "Additional Explanation" section of his MRFC, Dr. Hollerauer also explained that Plaintiff's records "suggest that the cognitive and attentional skills for simple one and two step tasks are intact." (Tr. 114). Consistent with Dr. Fyans's findings, Dr. Hollerauer also determined that Plaintiff could sustain this level of attention across a workday and work week and that she was capable of carrying out routine chores and tasks. *Id.*

## ANALYSIS

Plaintiff alleges that the ALJ failed to account for Plaintiff's moderate limitations in CPP, and particularly, in persistence, by using the formulaic phrase "simple, routine, and repetitive tasks" in the RFC. (Doc. 13, p. 4). Plaintiff notes that the ALJ found that Plaintiff had moderate difficulties in CPP; specifically, the ALJ gave some weight to the SACs' opinions, both of which found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods. (Doc. 13, p. 9).  However, Plaintiff asserts that the ALJ's restriction of Plaintiff to carrying out "detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks" is indicative of Plaintiff's "mental limits," though Plaintiff does not explain how this is different from addressing Plaintiff's persistence. *Id*. Plaintiff also takes issue with the ALJ limiting Plaintiff to a "low stress work environment with no fast-paced production requirements," as the ALJ did not cite to the record to find that such a restriction would resolve Plaintiff's moderate limitation in persistence. *Id*. at p. 10.

As Plaintiff points out, such phrases often indicate that an RFC is insufficient because the ability to stick with a given task over a sustained period of time is not fully captured by a description of the plaintiff's ability to learn how to do tasks of a given complexity. (Doc. 13, p. 10). *See also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Instead, the Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In

*Stewart*, for example, the Court observed, "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (citations omitted). The Court has reaffirmed that position several times in recent years. *See O'Connor-Spinner*, 627 F.3d at 620*; Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). Equally, limitations to "simple tasks not at a production-rate pace" are often insufficient. While the limitation to no production requirements such as an assembly line does address difficulties in maintaining pace, it does not address attention and concentration. *See Martin*, 950 F.3d at 374; *Varga* 794 F.3d at 815. The Seventh Circuit reiterated this point when it stated: "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp*, 916 F.3d at 676.

Although the Seventh Circuit has critiqued the use of limitations to "simple, routine, and repetitive tasks" as insufficient to capture the totality of a plaintiff's limitations when used in isolation, it has upheld RFCs which use the phrase when the ALJ also further describes how a plaintiff is limited. The Seventh Circuit put it succinctly in a recent case:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to

> stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

The ALJ in *Martin* adequately accounted for deficiencies in maintaining concentration, persistence, and pace by limiting the plaintiff to jobs that involve "only simple tasks with low stress, occasional changes, a flexible pace, and superficial interactions with others." *Martin*, 950 F.3d at 373. Similarly, in *Burmester*, the Seventh Circuit found no error where the ALJ limited the plaintiff to "simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public." *Burmester*, 920 F.3d at 509. The reviewing doctor in that case "stated in the 'Statement of Work Capacity' portion of his assessment that Burmester had the 'ability to understand, remember and carry out simple instructions subject to physical limitations,' that 'maintaining concentration and attention should be manageable' and that she 'should be able to withstand routine work stress and adapt to typical job site changes.'"

Seventh Circuit precedent does not require the ALJ to use specific words to express a claimant's limitations in maintaining concentration, persistence, or pace. The Seventh Circuit, however, explained what was required when it stated the following: "[w]e decline to provide a glossary of adjectives for use in RFC determinations. What we do

require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin*, 950 F.3d at 374.

As with *Martin*, the ALJ in the instant case goes beyond the formulaic phrase "simple, repetitive and routine tasks" and a rote restriction against fast-paced production by combining limitations meant to address Plaintiff's ability to handle tasks of a particular complexity, to complete tasks at a particular pace, and to adapt to the stressors of her environment. The ALJ limited Plaintiff not only to simple, routine, and repetitive tasks, but to carrying out detailed and uninvolved instructions in pursuit of those tasks. (Tr. 20). Further, the ALJ found that Plaintiff could adapt only to low-stress work environments and could work only at a slower pace; he tailored the RFC to account for those deficits. *Id*. In doing so, the ALJ captured the totality of Plaintiff's limitations.

Plaintiff takes issue with the ALJ's failure to add more stringent restrictions accounting for her persistence because the SACs found a moderate limitation in persistence in Section I of the MRFCA. (Doc. 13, p. 9). However, as the ALJ noted in his opinion, both SACs noted in the "Additional Explanation" sections of the MRFCAs that Plaintiff had the persistence to attend to one and two-step tasks in a low stress environment for a full eight-hour workday or a full work week. (Tr. 26). Plaintiff does not say so explicitly. But, in arguing that the ALJ failed to account for Plaintiff's limitations in persistence despite this finding, it suggests that Plaintiff believes the ALJ improperly

relied on the "Additional Explanation" sections of the SACs' MRFCAs, rather than their findings in Section I.

When a claimant has a severe impairment which does not equal a listing, the SAC provides a detailed assessment of the claimant's mental residual functional capacity on the MRFCA. In Section I, the SAC marks a checklist of potential areas of limitation. *See Hoeppner v. Kijakazi*, Case No. 20-CV-582, 2021 WL 4199336, at *5 (E.D. Wisc. Sept. 15, 2021). In section III, the SAC provides a Functional Capacity Assessment in narrative form. *Id*. This section records the RFC assessment and explains Section I in terms of the extent to which these functions could be performed in work settings. *Id*. (internal citations omitted). As the SACs in this case provided a narrative explanation of Plaintiff's capacity in the "Additional Explanation" section of the MRFC, this section is most analogous to Section III in this case. *See* (Tr. 79, 114). Many ALJs, have relied solely on Section III in order to formulate an RFC or hypothetical question for a VE, leading to litigation regarding whether the ALJ properly captured the suggested RFC. *Id*.

For example, in *Yurt*, the SAC noted that the plaintiff had moderate limitations in six areas of function in Section I of the MRFCA. 758 F.3d at 857. However, Section III simply noted that the plaintiff retained the capacity for unskilled work. *Id*. The Seventh Circuit held that the ALJ failed by relying solely on the Section III narrative when crafting the RFC because that section failed to account for all of the findings listed in Section I. *Id*. at 858. The Seventh Circuit applied the same reasoning to hypotheticals posed to VEs based solely on Section III of the MRFCA. *See Varga*, 794 F.3d at 816.

Next, in *DeCamp*, the SAC noted limitations in punctuality and in pace. 916 F.3d at 675. However, the Section III narrative stated only that the plaintiff was able to meet the demands of unskilled work. *Id.* The ALJ formulated a hypothetical for the VE that limited the claimant to "unskilled work with [a Specific Vocational Preparation] of two or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task at least ten percent of the workday." *Id.* However, the Seventh Circuit found that this hypothetical and the corresponding RFC failed to account for the limitations the SAC noted in punctuality. *Id.* at 676. Specifically, the Court noted that the ALJ cannot focus his analysis purely on the SAC's "bottom-line conclusions" without giving the VE any basis to evaluate "*all*" of the plaintiff's impairments. *Id.* (emphasis in original). Because the hypothetical posed to the VE was faulty, the RFC which mirrored that hypothetical was also faulty. *Id.* As the Eastern District of Wisconsin explained, the jurisprudential history preceding the Seventh Circuit's decision in *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021), makes "crystal-clear" that any "translation" of Section III of the MRFCA in an RFC or hypothetical posed to a VE must include all limitations noted in Section I. *Hoeppner*, 2021 WL 4199336, at *8.

The District Court in *Pavlicek* noted that the SAC found the claimant moderately limited in four areas in Section I: (i) understanding and remembering detailed instructions; (ii) carrying out detailed instructions; (iii) maintaining attention and concentration for extended periods; and (iv) completing a normal workday and workweek without interruptions from psychologically based symptoms or performing

at a consistent pace without an unreasonable number and length of rest breaks. *See Pavlicek v. Saul*, No. 19-cv-41-slc, 2020 WL 2092762, at *2 (W.D. Wisc. May 1, 2020), *aff'd*, 994 F.3d 777 (7th Cir. 2021). However, in Section III, the SAC stated:

> The medical evidence available supports that the claimant is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. Also claimant maintains the ability to sustain attention throughout extended periods of time (up to 2 hours at a time). [Medical evidence] endorses that the claimant maintains the ability to perform at a consistent pace particularly if [he] is engaged in a [sic] simple, repetitive tasks. [Medical evidence] supports that the claimant have [sic] an adequate ability to maintain an [sic] regular schedule.

*Id.* The ALJ, in turn, limited the claimant to the following:

> . . . understanding, remembering, and carrying out simple instructions and routine, repetitive tasks . . . capable of making simple work-related decisions or judgments, in an environment without fast-paced production requirements and with few, if any changes in work duties; limited to only occasional interaction with supervisors; and within the above limits, able to attend work, pay attention, and concentrate at work tasks within tolerable limits . . .

*Id.* at *4. The District Court concluded that this RFC sufficiently accounted for the claimant's moderate limitations in concentration, persistence, and pace. *Id.*

The Seventh Circuit upheld the District Court's decision in *Pavlicek*. 994 F.3d 777. On appeal, the plaintiff argued that the checklist noting moderate limitations conflicted with the findings in Section III of the MRFCA, making the ALJ's reliance on the narrative error. *Id.* at 783. However, the Court noted that the proper question was whether the narrative fully encapsulated and translated the findings in Section I. *Id.* (citing *Varga*, 794 F.3d at 816). The Court found that the ALJ's RFC adequately translated those findings.

The Court also noted that a moderate limitation would not always result in a finding limiting the claimant more than the RFC the ALJ provided: the new definition of a moderate limitation as "fair" did not mean that a claimant could not perform simple or repetitive tasks at a consistent pace. *Id*. This finding reinforced Seventh Circuit jurisprudence that an RFC which fully includes all of the findings in both Sections I and III of the MRFCA is sufficient. *See Hoeppner*, 2021 WL 4199336, at *8.

The RFC in the instant case includes all of the findings in both Section I of the SACs' MRFCAs and the "Additional Explanation" sections of the forms. Both Dr. Fyans and Dr. Hollerauer marked the checklist section to note that Plaintiff had a moderate limitation in maintaining her attention and concentration. (Tr. 79, 114). However, both SACs also found that Plaintiff's limitation did not interfere with her ability to concentrate throughout an eight-hour workday or a typical work week so long as other adaptations managed her environmental stressors and her work was limited to one and two-step tasks. *Id*. This explanation does not contradict the SACs' findings, but rather, elaborates on them: if Plaintiff's other limitations are adequately addressed, she is then capable of managing her attention and concentration throughout the workday. The ALJ appropriately tailored the RFC in this case to account for that limitation by accounting for necessary adaptations to Plaintiff's work environment, *i.e.*, the limitation to a low stress environment. (Tr. 20). Equally, the RFC included restrictions to "simple, repetitive, and routine tasks" with uninvolved instructions, meeting the requirement that the tasks she complete be one or two-step tasks. The RFC in this case therefore fully includes all of

the SACs' findings in both Section I of their MRFCAs and the "Additional Explanation" section of their findings. Accordingly, remand is not appropriate in this case, and the Court affirms the ALJ's decision.

CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **AFFIRMED.** The Clerk of Court is directed to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATE: March 28, 2022.**

Digitally signed
by Judge Sison 2
Date: 2022.03.28
14:11:40 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**